### WILSON TROLLEY CATCHER CO. v. FRANK RIDLON CO. et al.

(Circuit Court. of Appeals, First Circuit. June 27, 1910.)

No. 852.

PATENTS (§ 328\*)—VALIDITY—TROLLEY CONTROLLER.

> The Lord patent, No. 548,074, for a trolley pole and rope controller, claim 4, is void, as broader in its terms than the real invention described in the specification.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Suit in equity by the Wilson Trolley Catcher Company against the Frank Ridlon Company and others. Decree for defendants (173 Fed. 308), and complainant appeals. Affirmed.

William K. Richardson (J. Steuart Rusk, on the brief), for appellant.

Allen Webster, for appellees.

Before PUTNAM and LOWELL, Circuit Judges, and ALDRICH, District Judge.

LOWELL, Circuit Judge. This was a bill in equity to restrain the infringement of letters patent No. 548,074, granted to Lord, October 15, 1895, for improvements in trolley pole and rope controllers. Claim 4 alone is in issue, and reads as follows:

> "In combination with a trolley pole and with a trolley rope, a tension device for the rope and an automatic lock for locking the tension device when the trolley leaves the conductor."

The Circuit Court was of opinion that the claim was valid, but that the defendant did not infringe, and so it dismissed the bill. The complainant appealed to this court.

The trolley art has two connected needs: First. "A take-up," which shall absorb the slack of the trolley rope, a slack of varying length, inasmuch as the trolley wire is not always at the same height above the ground. The spring for taking up this slack must be of slight tension, so as not to check considerably the operation of the much more powerful spring which keeps the trolley wheel in touch with the the trolley wire. Second. Inasmuch as the trolley wheel sometimes leaves the trolley wire, the spring last mentioned, if uncontrolled, will throw the trolley pole into a position substantially perpendicular. As the car may hold its motion for a time, the trolley pole may thus be brought into collision with the cross-wires, or even with the feed wires, doing damage to some part of the structure. Control of the trolley pole in this respect was formerly had in two ways: (a) By a so-called "retriever," a spring stronger than that which holds up the trolley pole,

---

yet one which does not operate so long as the trolley wheel remains in place against the trolley wire. The retriever is released only when the wheel leaves the wire. Catching the pole, the retriever pulls it down nearly parallel with the top of the car. (b) By a "check," which differs in its object from the retriever in that it does not draw down the pole, but only checks its upward movement. Until something happens the check is held inoperative. When the trolley wheel leaves the wire, a detent is released, and the check becomes immediately operative.

As has been said, the Circuit Court somewhat doubtfully held the claim to be valid, though it dismissed the bill for want of proof of infringement. Like the Circuit Court, we also are required to pass upon the claim's validity before coming to the issue of infringement. The claim in suit is expressed broadly, and its language covers the combination of any kind of "tension device" or "take-up" with any kind of "automatic lock" or "check." Now take-ups were old in the art; so were retrievers; so were the two in combination. The complainant urges that Lord was the first to combine a take-up with a check, and therefore that the claim in suit is entitled to the broadest construction. If a mere check is generally preferred to a retriever (a retriever necessarily contains a check), it is hard to see why the obvious adaptation of a patent like that of Yeakley, No. 476,028, by omitting the machinery to retrieve, would not be covered by the claim in suit. But the Lord patent is concerned with a particular sort of locking device, not with locking devices in general.

"My invention, therefore, consists of two parts: First, a tension device for keeping the rope taut while the car is proceeding in the ordinary way; and, secondly, in a means for locking such device when the roller leaves the conductor, and thus preventing the end of the pole from being thrown above the level of the conductor itself."

"With this explanation, and still referring to the drawings, I now proceed to describe the locking device."

Still again:

"In practical operation I prefer to use the construction shown in the drawings, in which the trolley roller is mounted in a sliding casing acted upon by a coil spring; but I can accomplish the same result and still keep within the limits of my invention by attaching two springs near the trolley head and causing them to bear directly upon the pin on which the roller rotates."

In other words, the patentee declares that he does not limit himself to the "sliding casing," but expresses as its equivalent "two springs near the trolley head." This limited equivalency is far from the unlimited "automatic lock" of the claim in suit. The specifications show also that the tension device of the claim in suit is in effect a "spring-actuated reel."

We are of opinion that the language of the claim in suit is broader than Lord's real invention. There are other claims in the patent which are not here in suit, and which may protect that invention. We are not required to save the fourth claim in order to save the patent. We are unable to allow the validity of a claim so broad and unrestricted as is the one claim upon which the complainant here relies.

The decree of the Circuit Court is affirmed, and the appellees recover their costs of appeal.